IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MAXRELIEF USA, INC., | |
| *Counter-Plaintiff,* | Civil Action |
| v. | No. 18-cv-3854 |
| PAINAWAY AUSTRALIA PTY LIMITED CAN 151 146 997 and MUCH SHELIST P.C., | |
| *Counter-Defendants.* | |

MEMORANDUM OPINION

GOLDBERG, J.                                                                                                     May 24, 2023

This lawsuit involves two sellers of topical pain-relief sprays and originated over a dispute as to which seller was actually "Australia's #1." On September 7, 2018, Painaway Australia Pty Limited Can 151 146 997 ("Painaway") sued MaxRelief USA, Inc. ("MaxRelief USA") under the Lanham Act for false advertising. On March 30, 2022, the Honorable Petrese Tucker determined that "Australia's #1" is puffery and dismissed Painaway's Lanham Act claim. (ECF Nos. 56, 57.)

The case has been reassigned to my docket to resolve the remaining claims, which are MaxRelief USA's counterclaims against Painaway and its former counsel, Much Shelist, P.C. ("Much Shelist"), for intentional interference with current and prospective business relations and for abuse of process. MaxRelief USA alleges that Painaway initially pursued the wrong "MaxRelief" entity by suing an Australian company, non-party Natures Investments Holding Pty. Ltd. ("Natures Investments"), that previously sold a pain-relief spray under the brand name "MaxRelief." Through that suit, Painaway obtained what MaxRelief USA contends was an improper default judgment that forced retailers to drop MaxRelief USA's products.

1

Painaway and Much Shelist have moved for summary judgment on MaxRelief USA's counterclaims. For the reasons stated below, that motion will be granted in part and denied in part.

## I.  FACTS

The following facts are viewed in the light most favorable to MaxRelief USA as the party opposing summary judgment. Where these facts are materially disputed, those disputes are noted.

### A.  Natures Investments and MaxRelief USA

#### 1.  2011 to 2014: Natures Investments Manufactures "MaxRelief"-Branded Products

Non-party Natures Investments was founded in Australia in 2011 by Dale Abbott and Thomas Warren to manufacture topical pain relief products. Natures Investments sold its products under the brand name "MaxRelief." Its registered place of business was a gym owned by Warren located in Avalon Beach, Australia. (Painaway's Facts ¶¶ 7, 9[1]; MaxRelief USA's Response to Painaway's Facts ¶ 6; Spoto Dep. 74:4-13.)

In September 2011, Natures Investments applied to trademark the "MaxRelief" name and logo in Australia. In January 2012, Natures Investments registered "MaxRelief" products with the United States Food and Drug Administration (FDA), where Natures Investments was listed as the "labeler" of those products. The following month, Natures Investments filed a trademark application with the United States Patent and Trademark Office for a "MaxRelief" logo, MAXRelief. (Painaway's Facts ¶¶ 10, 21-22; Painaway's Exhibits L, M.) That application was abandoned and never issued.

---

[1] MaxRelief USA's response that this and other facts are "disputed as stated" because the cited document "speaks for itself" is improper and will be disregarded. See Fed. R. Civ. P. 56(c), (e); Boyle v. Penn Dental Med., No. 15-cv-4716, 2016 WL 9447031, at *1 n.1 (E.D. Pa. Aug. 16, 2016), aff'd, 689 F. App'x 140 (3d Cir. 2017).

In 2012, an individual named Peter Spoto created MaxRelief USA as a Delaware-incorporated business. Spoto described Natures Investments' founders Abbot and Warren as his "associates," and Spoto even lived with Abbot for about a month upon moving to the United States. (MaxRelief USA's Response to Painaway's Facts ¶¶ 4-5; Spoto Dep. 52:17-20, 69:18-24, 83:10-12.) Abbott, Warren, and Spoto agreed that Natures Investments would manufacture "MaxRelief"-branded products and Spoto would sell those products in the United States. This arrangement was memorialized in January 2012 by way of a "License & Distribution Agreement" and a "Services" agreement. The "License & Distribution Agreement" identified Natures Investments as the owner of the trademark "Maxrelief [sic]." As planned, MaxRelief USA imported and sold Natures Investments' "MaxRelief"-branded products and invoiced Natures Investments for "overseas representation and expenses." (Spoto Dep. 70:3-8, 78:23-79:15; Painaway's Exhibits C, J at MAX000227; Painaway's Facts ¶¶ 17-18, 23; MaxRelief USA's Response to Painaway's Facts ¶ 6.)

      2.    <u>2014 Onward: MaxRelief USA Starts Manufacturing "MaxRelief"-Branded Products</u>

In 2014, MaxRelief USA "t[ook] over manufacturing" and began selling its own "MaxRelief"-branded pain relief products in the United States. (Spoto Dep. 75:14-76:6, 85:4-10, 88:21-89:6; MaxRelief USA's Response to Painaway's Facts ¶ 6.)[2] MaxRelief USA did not pay Natures Investments for the right to make and sell "MaxRelief"-branded products. For some reason, MaxRelief USA's accounting system continued to show payments between MaxRelief

---

[2] The parties dispute whether Natures Investments' "MaxRelief" products were the "same" as MaxRelief USA's "MaxRelief" products. (<u>See</u> MaxRelief USA's Response to Painaway's Facts ¶ 6.) While that dispute may be relevant to Painaway's supposition that MaxRelief USA was a "phoenix operation" designed to thwart Natures Investments' creditors, it is not material to any issue presented by Painaway's motion for summary judgment.

3

USA and Natures Investments through 2016, although Spoto testified that these transactions were "a wash" because the same amount was paid in both directions. Sometime between 2014 and 2017, Natures Investments ceased operations and was dissolved. (See Painaway's Exhibit Q; Spoto Dep. 84:2-85:10, 126:21-127:3; Painaway's Facts ¶ 33.)

      **B.     Painaway's First Lawsuit Against "Natures Investments d/b/a MaxRelief USA" (the "California Lawsuit")**

Painaway is an Australian company that also sells topical pain relief products. Much Shelist is a Chicago-based law firm that represented Painaway throughout the underlying facts. (Painaway's Facts ¶¶ 1-2.)[3]

In July 2015, Painaway filed a lawsuit (the "California Lawsuit") in the United States District Court for the Northern District of California against a company called "Natures Investments Holding [sic] Pty Ltd. d/b/a MaxRelief USA." Painaway alleged that this company was violating the Lanham Act by advertising a "MaxRelief"-branded pain relief spray as "Australia's #1 Pain Relief Spray." (Painaway's Facts ¶ 35; Painaway's Exhibit S ¶ 1.) Painaway apparently deduced that Natures Investments was "doing business as" MaxRelief USA based on Natures Investments' 2012 trademark application (which was later abandoned) for the "MaxRelief" name and logo, as well as the fact that the same name and logo appeared on the "MaxRelief" website at maxrelief.us.[4] Painaway's attorney Martin O'Hara testified that he believed at the time that Natures Investments and MaxRelief USA were "one and the same." There

---

[3] Nearly all of the relevant actions undertaken by Painaway were done through Much Shelist acting as Painaway's agent. Neither party argues that Painaway and Much Shelist should be treated separately for purposes of the present motion for summary judgment. Accordingly, this opinion uses the name "Painaway" in reference to actions taken by Much Shelist in its representative capacity.

[4] This website was later changed to maxrelief.com, but that change does not appear to be material to the present motion for summary judgment.

are no facts of record indicating that Painaway conducted a corporate records search for a "MaxRelief" entity in the United States prior to initiating the California Lawsuit. (Painaway's Exhibit S ¶ 8; O'Hara Dep. 30:8-24, 63:12-20.)

Painaway attempted to serve "Natures Investments Holding Pty Ltd. d/b/a MaxRelief USA" at a San Francisco, California address listed on the website https://maxrelief.us/contact. MaxRelief USA received a copy of the complaint, but determined that it was not obligated to respond because the defendant was "Natures Investments Holding Pty Ltd. d/b/a MaxRelief USA" rather than "MaxRelief USA, Inc." (MaxRelief USA's Exhibit 11 ¶ 4; MaxRelief USA's Additional Facts ¶ 14.)

Neither MaxRelief USA nor Natures Investments appeared in court to defend the lawsuit. However, on August 25, 2015, the District Court received a document titled "Notice of Erroneous Service" sent by "the occupants" of the San Francisco address, stating: "The defendant listed in the above case is unknown to the occupants of this [post office] box." MaxRelief USA denies sending this notice, but does not cite evidence to support its denial (such as a declaration from Spoto) or offer an alternative explanation for who might have sent the notice. (Painaway's Facts ¶ 40; Painaway's Exhibit U; MaxRelief USA's Response to Painaway's Facts ¶ 40.)

Painaway moved for default judgment, but the District Court denied the motion without prejudice after determining that a single attempt to serve by mail at a post office box was not sufficient under California law. Painaway then voluntarily dismissed the California Lawsuit without prejudice. (Painaway's Exhibit W; Painaway's Facts ¶ 41.)

    **C.    Painaway's Second Lawsuit and Default Judgment Against "Natures Investments d/b/a MaxRelief USA" (the "First Pennsylvania Lawsuit")**

In July 2016, Painaway filed a second lawsuit against "Natures Investments Holding Pty Ltd. d/b/a MaxRelief USA," this time in the Eastern District of Pennsylvania. Painaway served the

5

complaint at Natures Investments' headquarters (i.e. Warren's gym) in Avalon Beach, Australia, an address it obtained from the Australian Securities and Investments Commission database. (Painaway's Facts ¶ 42; Painaway's Exhibit Z; O'Hara Dep. 38:12-20.) When no defendant responded to the lawsuit, Painaway again moved for a default judgment. This time, service was found to be proper and the motion was granted. Included in the default judgment was an injunction against "Natures Investments Holding Pty Ltd. d/b/a MAXRelief [sic] USA" prohibiting it from "advertising and promoting MAXRelief as 'Australia's #1 Pain Relief Spray' in the United States." (Docket Entry 19 in 16-cv-3627.)

### D. The First Round of Cease-and-Desist Letters

In March 2017, Painaway began sending cease-and-desist letters to customers listed on maxrelief.com, notifying them of the injunction and demanding that they stop advertising products from "Natures Investments Holding Pty Ltd, d/b/a MaxRelief USA" as "Australia's #1 Pain Relief Spray." (See MaxRelief USA's Exhibit 14 at 000334.)

### E. Painaway's Discovery of the Two "MaxRelief" Entities

On October 25, 2017, Painaway's Australian counsel Michael Joseph sent Painaway's Chicago counsel Martin O'Hara an email stating:

> Natures Investments Holdings Pty Ltd (**NIH**) is now in Liquidation and therefore under control of a Court appointed Liquidator.
>
> We will check with the Liquidator but **I do not believe it is NIH that is selling the product or hosting the Website**.
>
> The people behind NIH are very dodgy and it seems to be a classic Phoenix operation where another company has emerged to operate the business owned by NIH leaving its creditors behind.
>
> Those issues need to be dealt with here with the Liquidator. However, **I doubt it is accurate to say that NIH is continuing to advertise and sell the product and perhaps the [cease-and-desist] letter could be modified to bear that in mind**.

6

(MaxRelief USA's Exhibit 15 (emphasis added).) O'Hara responded: "I have revised based on your comments." The parties' summary judgment briefing does not reveal what, if any, revisions were made to the cease-and-desist letters based on the discovery that Natures Investments and MaxRelief USA were separate entities.

    **F.**    **Subsequent Cease-and-Desist Letters**

Painaway sent an additional approximately 180 cease-and-desist letters beginning on October 31, 2017 to customers listed on maxrelief.com. (O'Hara Dep. 73:10-17; MaxRelief USA's Exhibit 14 at 000336.) Below is the text of a letter sent to Brewerton Pharmacy:

> Please be advised that I represent Painaway Australia Pty Limited can 151 146 977 ("Painaway"). Painaway filed a lawsuit against Natures Investments Holding Pty Ltd. d/b/a MaxRelief USA ("MaxRelief") in the United States District Court for the Eastern District of Pennsylvania. Therein, Painaway asserted that MaxRelief was engaging in false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by advertising that it is Australia's #1 Pain Relief Spray. The Court found in favor of Painaway, and entered an Order specifically enjoining MaxRelief "from advertising and promoting MaxRelief as 'Australia's #1 Pain Relief Spray' in the United States." A copy of the Injunction Order is enclosed.
>
> **Despite the Injunction Order, the website maxrelief.com continues to advertise "Australia's #1 Pain Relief Spray," in direct violation of the Injunction Order**. The maxrelief.com website also states that you are a Retailer of the products advertised on the website. **You therefore are selling products that are being advertised in direct violation of the Federal District Court's Injunction Order**. Even more, you are potentially receiving an economic benefit that is derived from the knowing and intentional violation of the Federal Court's Injunction Order.
>
> Accordingly, Painaway demands that you immediately cease and desist from selling products identified on the maxrelief.com website. Should you fail to do so, Painaway will avail itself of its legal remedies to ensure that the Federal District Court's Injunction Order is followed, and no economic benefit is being obtained as a result of the continued false advertising.

(MaxRelief USA's Exhibit 14 at 000336 (emphasis added).) The parties do not attach a list of all customers who received this letter, but a fair inference form O'Hara's testimony is that the letter was sent to all customers then listed on maxrelief.com. (O'Hara Dep. 73:10-17.)

### G. Fallout from the Cease-and-Desist Letters

One of MaxRelief USA's customers, Amazon, had placed periodic (roughly monthly) orders for MaxRelief USA's products from July 2014 until April 2017. On April 17, 2017, Amazon responded to Painaway's cease-and-desist letter by informing Painaway that it would remove MaxRelief USA's product. In April 2017, Amazon stopped doing business with MaxRelief USA. MaxRelief USA was told on May 3, 2017 that it would not be allowed to "relist" its product and that it should contact Painaway's lawyer Martin O'Hara with any questions. (MaxRelief USA's Exhibit 16; Spoto Dep. 168:3-6.)

Another MaxRelief USA customer, Rochester Drug Cooperative, had placed orders for MaxRelief USA's products throughout 2015 and 2016. In November 2017, Brewerton Pharmacy (a member of Rochester Drug Collective) faxed MaxRelief USA a copy of Painaway's cease-and-desist letter with the handwritten note: "Sent e-mail 11/6/17 to remove Brewerton + Village from website where to buy." (MaxRelief USA's Exhibits 5, 17; Spoto Dep. 196:18-21.)

Okeechobee Drugs was a "decent size buyer" of MaxRelief USA's products. On November 3, 2017, Okeechobee Drugs informed MaxRelief USA that it could no longer promote MaxRelief USA's products until it received clearance from Painaway's counsel. (MaxRelief USA's Exhibit 18; Spoto Dep. 196:22-197:8.)

### H. "Wayne Roberts" Email

On November 13, 2017, MaxRelief USA sent an email to O'Hara stating that MaxRelief USA and Natures Investments were different entities and that Judge Rufe's injunction applied only to the latter. MaxRelief USA demanded that Painaway stop sending cease-and-desist letters to MaxRelief USA's customers. The email was signed "Wayne Roberts / Corporate Counsel / MaxRelief USA, Inc." It does not appear that "Wayne Roberts" is a real person. (MaxRelief USA's Exhibit 19; Painaway's Facts ¶ 52.)

I.     **The Second Pennsylvania Lawsuit**

In September 2018, Painaway filed the instant Lanham Act lawsuit, this time naming as defendant "MaxRelief USA, Inc.," which it served at MaxRelief USA's corporate registered address in Delaware. In October 2018, MaxRelief USA answered the complaint and asserted its counterclaims. (Complaint, ECF No. 1; Proof of Service, ECF No. 2; Answer, ECF No. 7.)

On March 30, 2022, Judge Tucker granted MaxRelief USA's motion for summary judgment and dismissed Painaway's Lanham Act false advertising claim, finding that "Australia's #1" is nonactionable puffery. (ECF No. 56.) This case was reassigned to me on July 22, 2022.

On July 6, 2022, Painaway filed a motion for summary judgment as to MaxRelief USA's counterclaims. That motion is now before me.

II.    **LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if there is evidence from which a reasonable factfinder could return a verdict for the non-moving party, and a dispute is "material" if it might affect the outcome of the case under governing law. Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The court must view the evidence in the light most favorable to the non-moving party. Galena v. Leone, 638 F.3d 186, 196 (3d Cir. 2011). However, "unsupported assertions, conclusory allegations or mere suspicions" are insufficient to overcome a motion for summary judgment. Schaar v. Lehigh Valley Health Servs., Inc., 732 F. Supp. 2d 490, 493 (E.D. Pa. 2010) (citing Williams v. Borough of W. Chester, Pa., 891 F.2d 458, 461 (3d Cir. 1989)).

The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate

9

the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the moving party's initial Celotex burden can be met by showing that the non-moving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case." Id. at 322.

After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut the moving party's claim by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations …, admissions, interrogatory answers, or other materials" that show a genuine issue of material fact or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c)(1)(A).

### III.  DISCUSSION

#### A.  Abuse of Process

"In order to state a cause of action for abuse of process it must be alleged that the defendant used a legal process to accomplish a purpose for which the process was not designed." Al Hamilton Contracting Co. v. Cowder, 644 A.2d 188, 191 (Pa. Super. Ct. 1994). "The classic example is the initiation of a civil proceeding to coerce the payment of a claim completely unrelated to the cause of action sued upon." Id. at 192. "[T]here must be an act or threat not authorized by the process, or the process must be used for an illegitimate aim such as extortion, blackmail, or to coerce or compel the plaintiff to take some collateral action." Id. "[T]here is no liability where the defendant

has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Id.[5]

MaxRelief USA claims that Painaway committed abuse of process in the following ways: (1) by initiating the First Pennsylvania Lawsuit against Natures Investments, which MaxRelief USA characterizes as the "wrong" defendant; (2) by obtaining a default judgment against Natures Investments; and (3) by sending cease-and-desist letters to customers of MaxRelief USA based on an injunction against Natures Investments, even after learning that Natures Investments and MaxRelief USA were separate entities. I consider each of these actions in turn.

1. Initiation of the First Pennsylvania Lawsuit and Default Judgment

MaxRelief USA first claims that Painaway committed abuse of process when it initiated the First Pennsylvania Lawsuit against Natures Investments.

Even viewing the evidence in the light most favorable to MaxRelief USA, the record is insufficient to create a factual dispute as to whether Painaway brought the First Pennsylvania Lawsuit for an improper purpose. There is no evidence that Painaway sought to obtain relief against an entity other than Natures Investments or that Painaway disbelieved its allegation that Natures Investments was selling "MaxRelief"-branded products with the slogan "Australia's #1." In fact, Painaway was correct that Natures Investments did previously sell "MaxRelief"-branded products. Moreover, when Painaway attempted to serve a complaint at the address on MaxRelief USA's website, it was rebuffed by a letter informing it that the defendant was "unknown" to "the occupants" of that address. Thus, Painaway's decision to retry service at Natures Investments'

---

[5] The parties agree that Pennsylvania law applies and that, in any event, application of a different state's law would not change the outcome. (Motion at 20; Brief in Opposition at 15.)

headquarters in Australia cannot raise an inference that Painaway was attempting to hide the First Pennsylvania Lawsuit from MaxRelief USA in an effort to secure a default judgment.

The only defect MaxRelief USA has identified with Painaway's initiation of the First Pennsylvania Lawsuit is that Painaway did not search Delaware corporate records to discover the existence of an entity named "MaxRelief USA, Inc." But the undisputed facts show that Painaway had no reason to suspect that a United States–incorporated "MaxRelief" business existed or that Natures Investments was not still selling "MaxRelief"-branded products. Even if Painaway had discovered an entity named "MaxRelief USA, Inc.," there is no evidence as to how such a discovery would or should have impacted Painaway's decision to sue Natures Investments, given that MaxRelief USA started out as a distributor for Natures Investments. These facts at most show that Painaway could have performed additional due diligence, not that it initiated the First Pennsylvania Lawsuit for "a purpose for which the process was not designed."[6]

The same applies to Painaway's request for a default judgment and injunction against Natures Investments. While Painaway may have been mistaken as to whether Natures Investments was still selling "MaxRelief"-branded products, there is no evidence that Painaway obtained the injunction for any purpose other than stopping Natures Investments from continuing to use the slogan "Australia's #1." Summary judgment will therefore be granted as to MaxRelief USA's

---

[6] Painaway also argues that the initiation of a lawsuit can never serve as the basis for an abuse of process claim because "abuse of process involves the perversion of legal process after it has begun," in contrast to "[w]rongful use of process," which "involves the initiation of process without probable cause." Al Hamilton, 644 A.2d at 191 (emphasis added). However, "initiation of a civil proceeding" can constitute abuse of process if it is "to coerce the payment of a claim completely unrelated to the cause of action sued upon." Id. at 192; see also Tillman v. City of Coatesville, No. 17-cv-4152, 2018 WL 950111, at *3 (E.D. Pa. Feb. 16, 2018) (allegation of bringing lawsuit for improper purpose of justifying arrest sufficient to state a claim for abuse of process).

claim that the initiation of the First Pennsylvania Lawsuit and subsequent default judgment constituted abuse of process.

        2.        <u>Cease and Desist Letters</u>

MaxRelief USA next contends that Painaway committed abuse of process by sending cease-and-desist letters to MaxRelief USA's customers referencing an injunction against a different entity, namely Natures Investments. Painaway does not contest that cease-and-desist letters meet the definition of "process" actionable in an abuse of process claim. (<u>See</u> Painaway's Motion at 27-28.) <u>See also</u> <u>Rosen v. Am. Bank of Rolla</u>, 381, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) ("The word 'process' as used in the tort of abuse of process has been interpreted broadly, and encompasses the entire range of procedures incident to the litigation process." (quotation marks omitted)). Instead, Painaway argues that by sending cease-and-desist letters it did not "abuse" the judicial process because the letters merely sought to enforce a lawfully obtained court order.

As to the first batch of cease-and-desist letters sent in March 2017, I agree with Painaway: there is no evidence that Painaway knew, at that time, that anything in the letters was untrue. As far as Painaway could tell, the customers listed on maxrelief.com were selling Natures Investments' "MaxRelief"-branded products with a slogan that had been enjoined. MaxRelief USA has not pointed to sufficient facts that could establish that these cease-and-desist letters were sent for "a purpose for which [the injunction] was not designed." While MaxRelief USA complains that Painaway's letter shortened the defendant "Natures Investments Holding Pty Ltd. d/b/a MaxRelief USA" to just "MaxRelief," the letter clearly stated the full name of the defendant and defined the term "MaxRelief" to refer to that defendant, not some other entity. These statements were accurate, and, based on what Painaway knew at the time, it had no reason to suspect that

these terms could cause confusion. Summary judgment will be granted on MaxRelief USA's abuse of process claim as to cease-and-desist letters sent in March 2017.

I reach a different result as to the second batch of cease-and-desist letters sent on October 31, 2017. As to those, a factfinder could find that Painaway was aware that Natures Investments was not selling products on maxrelief.com and it was not "accurate to say that [Natures Investments] is continuing to advertise and sell the product." (MaxRelief USA's Exhibit 15.) The letters stated that "maxrelief.com continues to advertise 'Australia's #1 Pain Relief Spray,' in direct violation of the Injunction Order" and "You [the customer] therefore are selling products that are being advertised in direct violation of the Federal District Court's Injunction Order." (MaxRelief USA's Exhibit 14 at 000336.) A factfinder could find these statement to be false. The letter implied that the recipient customer was selling the same products affected by the injunction, but a reasonable inference is that MaxRelief USA's products had not been enjoined. And Painaway backed up these representations with the threat that the recipient customer might be found in violation of a court order. Thus a factfinder could infer that Painaway sent this second batch of cease-and-desist letters with the purpose of inducing businesses unaffected by the injunction to nevertheless cease carrying "MaxRelief"-branded products out of fear that the injunction might apply to them, which would be a "threat not authorized by the process." Al Hamilton, 644 A.2d at 192. An inference could follow that Painaway knew this was a purpose for which the injunction was not intended.

Painaway's principal response is that Natures Investments and MaxRelief USA, even if legally separate entities, were nevertheless closely related. Although the undisputed facts do suggest a close and ongoing relationship between Natures Investments and MaxRelief USA, it is not immediately clear how this relates to the elements of abuse of process. Painaway does not argue that the District Court's order actually applied to MaxRelief USA or that MaxRelief USA

14

was somehow bound by it due to its interrelatedness with Natures Investments. To the extent Painaway is suggesting that the cease-and-desist letters were accurate or that it believed them to be accurate due to MaxRelief USA's close relationship with Natures Investments, that argument at most creates a factual dispute given MaxRelief USA's evidence to the contrary.

Painaway places considerable emphasis on what it considers to be MaxRelief USA's own bad conduct—such as anonymously steering Painaway from MaxRelief USA's California address and impersonating an attorney named "Wayne Roberts." But it is for the factfinder to decide whether Painaway responded in good faith to the confusion allegedly generated by MaxRelief USA.

For these reasons, a factfinder could find the elements of abuse of process satisfied as to cease-and-desist letters sent on October 31, 2017 and afterward. Summary judgment on this claim will, accordingly, be denied.

### B.     Interference with Existing or Prospective Contractual Relations

"Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct; and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference." Acumed LLC v. Advanced Surgical Servs., Inc., 561 F.3d 199, 212 (3d Cir. 2009). MaxRelief USA claims that Painaway tortiously interfered with sales of MaxRelief USA's products by initiating the First Pennsylvania Lawsuit, obtaining a default judgment and injunction against Natures Investments, and sending cease-and-

15

desist letters to MaxRelief USA's customers referencing the injunction. Painaway disputes only the first and fifth elements, namely: whether MaxRelief USA can show a "contractual or prospective contractual or economic relationship" with its customers and whether there was a "reasonable likelihood" that a prospective relationship would have occurred but for Painaway's conduct.

As to the first element, MaxRelief USA does not argue that Painaway caused any customer to breach an existing contract but instead focuses on the loss of future sales occasioned by Painaway's cease-and-desist letters. The types of prospective business relationships that may serve as the basis for a tortious interference claim include "contractual" and "economic" relationships. Acumed, 561 F.3d at 212. It is not necessary for the plaintiff to "be a party to an explicit agreement with a third person." Karpf v. Massachusetts Mut. Life Ins. Co., No. 10-cv-1401, 2018 WL 1142189, at *17 (E.D. Pa. Mar. 1, 2018). Instead, "it is sufficient to aver interference with a continuing business relationship, such as that existing between retailer and customer." Uber v. Exxon Corp., 31 Pa. D. & C. 3d 339, 341 (Cumberland Cty. Com. Pl. 1983) (citing Restatement (Second) of Torts § 766B, cmt. c (1979)); see also Int'l Diamond Importers, Ltd. v. Singularity Clark, L.P., 40 A.3d 1261, 1274 (Pa. Super. Ct. 2012) (recognizing Restatement § 766B as consistent with Pennsylvania law). MaxRelief USA's relationships with customers to sell pain-relief products therefore qualify as the types of business relationships protected by the tort of intentional interference with prospective contractual relations.

As to the fifth element, MaxRelief USA must show a "reasonable likelihood" that it would have made future sales but for Painaway's interference. Acumed, 561 F.3d at 212. "A 'reasonable likelihood' … is something less than a contractual right but more than a mere hope that there will be a future contract." Id. at 213. "This must be something more than … the innate optimism of the salesman." Glenn v. Point Park Coll., 272 A.2d 895, 899 (Pa. 1971). A reasonable likelihood may

be shown through "established business relationships with … customers" combined with "a reasonable expectation of a continuation of those business relationships." Uber, 31 Pa. D. & C. 3d at 341.

      MaxRelief USA has presented sufficient evidence that a factfinder could conclude there was a reasonable likelihood its customers would have placed additional orders had Painaway not interfered. For example, Okeechobee Drugs told MaxRelief USA that it would have to "stop" promoting MaxRelief USA's products "until" it received clearance from Painaway's counsel. The use of the words "stop" and "until" could imply that Okeechobee Drugs wanted to continue selling MaxRelief USA's products but believed it was prevented by the injunction. This inference is strengthened by the fact that Okeechobee Drugs had been a "decent size buyer" of MaxRelief USA's products in the past.

      As another example, when Brewerton Pharmacy told MaxRelief USA to remove it from maxrelief.com, it sent MaxRelief USA a copy of Painaway's cease-and-desist letter. Again, a factfinder could take this to mean that Brewerton would have kept selling MaxRelief USA's products had it not been for Painaway's involvement, especially given that Brewerton's cooperative had previously made regular orders for those products. Based on this evidence a factfinder would be justified in concluding that there was a reasonable likelihood that MaxRelief USA's customers would continue to buy had Painaway not told them to stop.

      Painaway argues that MaxRelief USA's reliance on existing relationships with customers like Brewerton Pharmacy is insufficient because "a plaintiff must base its claim that there was a prospective contractual relationship on something other than an existing or current relationship." Acumed, 561 F.3d at 213; see also Strickland v. Univ. of Scranton, 700 A.2d 979, 985 (Pa. Super. Ct. 1997) (finding mere existence of employment contract insufficient to infer that it would have been renewed). But MaxRelief USA has shown more than an existing or current relationship, given

statements by customers implying that they would keep buying if not prevented by the injunction. In addition, while Painaway's cited cases hold that an existing business relationship is insufficient standing alone, they do not suggest that evidence of past dealings should be ignored in determining whether sales will continue in the future. A factfinder could therefore find it relevant that MaxRelief USA made regular, consistent sales to its customers that ceased the moment Painaway got involved. Cf. Pierre & Carlo, Inc. v. Premier Salons, Inc., 713 F. Supp. 2d 471, 487 (E.D. Pa. 2010) (finding the "reasonable probability" element satisfied where "[plaintiff] clearly had business relationships with its customers, many of whom had repeatedly visited the salon over the course of many years"); Karpf, 2018 WL 1142189, at *18 (finding the element satisfied where the plaintiff "had been [an insurance] agent for almost 30 years, had approximately 3,500 clients, and was one of that company's top agents").

Painaway does not dispute the other elements of tortious interference in its motion for summary judgment. To the extent Painaway impliedly disputes that it lacked "privilege or justification" to send the cease-and-desist letters, a factfinder could find otherwise for the reasons stated previously with respect to abuse of process. Painaway's statements to MaxRelief USA's customers implying that they were selling products in violation of a court order could be found to be false, which is the type of conduct that may give rise to a tortious interference claim. See Restatement (Second) of Torts § 767 cmt. c.

### IV. CONCLUSION

For the reasons set out above, Painaway's motion for summary judgment will be granted in part and denied in part.

An appropriate order follows.